Hillsborough-northern judicial district
No. 2007-646

COMMUNITY RESOURCES FOR JUSTICE, INC.

v.

CITY OF MANCHESTER

Argued: February 14, 2008
Opinion Issued: April 18, 2008

*Nixon Peabody LLP*, of Manchester (*David A. Vicinanzo & a.* on the brief, and *Mr. Vicinanzo* orally), for the plaintiff.

*Thomas I. Arnold, III*, deputy city solicitor, of Manchester, on the brief and orally, for the defendant.

BRODERICK, C.J. The defendant, the City of Manchester (City), appeals an order of the Superior Court (*Barry*, J.) ruling that the City's zoning ordinance prohibiting correctional facilities in all of its zoning districts is unconstitutional as applied to the plaintiff, Community Resources for Justice, Inc. (CRJ). We affirm.

This is the second appeal of this case and much of its lengthy procedural history is set forth in our prior decision. *See Cmty. Res. for Justice v. City of Manchester*, 154 N.H. 748 (2007). We provide a brief background here. CRJ is a non-profit organization that operates "halfway houses" under contracts with the Federal Bureau of Prisons. Since 2004, CRJ has sought approval to use a building it owns on Elm Street in Manchester as a halfway house. Such approval has been denied by the City on the ground that CRJ's proposed use constitutes a "correctional facility" as defined by the City's zoning ordinance, a use that is not permitted in any of the city's zoning districts. The City concedes that its ban on correctional facilities does not apply to state-run institutions. *Id.* at 755.

CRJ challenged the zoning ordinance, arguing, *inter alia*, that "the City's ban of correctional facilities, as applied to CRJ, violates its federal and state constitutional rights to equal protection." *Id.* at 757. In response to a request by CRJ to clarify our intermediate scrutiny test, we acknowledged that, rather than evolving in harmony with changes under federal law, "our tests for intermediate level scrutiny and rational basis review under our State Constitution have remained substantially similar to one another." *Id.* at 762. Accordingly, in order to "eliminate the confusion in our intermediate level of review and to make our test more consistent with the federal test," we held that "intermediate scrutiny under the State Constitution requires that the challenged legislation be substantially related to an important governmental objective." *Id.* "The burden to demonstrate that the challenged legislation meets this test rests with the government (in this case, the City)." *Id.* We remanded for further proceedings consistent with this standard. *Id.* at 763.

Following remand, the trial court held a hearing to determine whether the City's zoning ordinance violates the Zoning and Enabling Act, RSA 674:16-:23 (1996 & Supp. 2007), or equal protection. Based upon the pleadings, argument and evidence in the certified record, the trial court found that the ordinance "does not promote or provide for the general welfare of the community, conflicts with RSA 674:16, and is therefore ultra vires as an invalid exercise of the police power delegated to the City pursuant to the Zoning and Enabling Act." The court also found that the

City provided no evidence justifying the differential treatment for halfway houses and that the City failed to demonstrate that its wholesale ban on federal halfway houses is substantially related to furthering an important governmental interest. Accordingly, the trial court ruled that the City's prohibition of halfway houses as applied to CRJ violates CRJ's equal protection rights under the New Hampshire Constitution. *See* N.H. CONST. pt. I, arts. 2, 12. The trial court granted CRJ a "builder's remedy," and this appeal followed.

"On appeal, we sustain the findings and rulings of the trial court unless they are lacking in evidential support or tainted by error of law." *Phillips v. City of Concord*, 145 N.H. 522, 524 (2000) (quotation omitted). Although our policy is to address constitutional issues only when necessary, *see State v. Berrocales*, 141 N.H. 262, 264 (1996), we conclude that the factual record is inadequate to decide whether the ordinance is ultra vires. Because we conclude that the constitutional issue is dispositive, we choose to address it.

The City argues that the zoning ordinance does not deny CRJ equal protection because there is "no doubt" that halfway houses are an "undesirable" land use and "[p]reventing a concentration of undesirable uses, including correctional institutions, within the City of Manchester is an important governmental objective to which the City's zoning restriction is substantially related." In response, CRJ argues that "[d]espite this Court's clear direction in [*Community Resources*], the City did not present a single expert, study, survey, learned paper—in fact, not even a scrap of paper—in evidence on remand" in support of its position. Furthermore, CRJ argues, the City's assumption that the proposed use is "undesirable" is contrary to the trial court's express finding that the proposed federal halfway house is an essential need for offenders and the community.

█ As the trial court stated, "Pursuant to the newly articulated intermediate scrutiny test, the City was required to prove that distinguishing halfway houses from other similar residential facilities and institutions serves an important governmental interest, and that the absolute ban on halfway houses is substantially related to furthering that interest." We agree that, pursuant to our decision in *Community Resources*, the burden is upon the City to demonstrate that the zoning ordinance is substantially related to an important governmental objective. *Community Resources*, 154 N.H. at 762. To satisfy this burden, "the government may not rely upon justifications that are hypothesized or invented *post hoc* in response to litigation, nor upon overbroad generalizations." *Id.* (citation and quotations omitted).

The trial court found that the City's actual purpose in banning federal halfway houses is not to prevent a concentration of correctional facilities in

Manchester, but, more specifically, to address its concerns that the federal prisoners housed at the halfway house would either pose some threat to the surrounding community, engage in recidivism, or affect surrounding property values. However, the City presented *no evidence* that these concerns were founded in fact. As the trial court stated, "the City has provided no factual evidence beyond mere speculation demonstrating that federal halfway houses present a danger to the community such that the City needs to protect its residents from recidivists." In contrast, the record contains substantial evidence that the proposed use will provide an important social benefit and not pose any risk to the safety of the neighborhood, and includes letters from police, community and religious leaders, law enforcement experts including a United States Attorney, a United States Marshal and the United States Probation Office, indicating overwhelming support for the proposed halfway house.

The trial court concluded that "[t]he City's reliance upon . . . hypothesized and overly generalized justifications is insufficient to meet the demanding intermediate scrutiny standard." We agree that the record is devoid of evidence justifying the City's absolute ban on CRJ's use of its property as a federal halfway house. Because the City has failed to meet its burden of showing that its prohibition of federal halfway houses is substantially related to furthering an important governmental interest, we affirm the trial court's ruling that the City's zoning ordinance violates CRJ's equal protection rights as guaranteed by the State Constitution. *See Community Resources*, 154 N.H. at 762.

The trial court granted CRJ a builder's remedy. On appeal, the City argues that this was error, because CRJ's proposed project is not reasonable or consistent with sound zoning concepts. *See Britton v. Town of Chester*, 134 N.H. 434, 444 (1991).

"A 'builder's remedy' is the specific granting to a developer of a right to complete a proposed project." *Soares v. Town of Atkinson*, 129 N.H. 313, 316 (1987). "A successful plaintiff is entitled to relief which rewards his or her efforts in testing the legality of the ordinance and prevents retributive action by the municipality, such as correcting the illegality but taking pains to leave the plaintiff unbenefitted." *Britton*, 134 N.H. at 442. "Once an existing zoning ordinance is found invalid . . . the court may provide relief in the form of a declaration that the plaintiff builder's proposed use is reasonable, and the municipality may not interfere with it." *Id.* at 444. "The plaintiff must bear the burden of proving reasonable use by a preponderance of the evidence." *Id.* Absent an unsustainable exercise of discretion, we will not overturn the trial court's grant of a builder's remedy. *Id.* at 442.

■ Here the trial court made detailed findings regarding the reasonableness of the proposed use including: that the City has a large number of individuals who are required to return following the termination of their federal sentences and that there are currently no services to help such individuals with their transition to society; that the property at issue is particularly suitable for a halfway house, because of its proximity to public transportation, support services and commercial enterprises offering job opportunities; that property values will not be adversely affected; that it will not change the character of the neighborhood; that the proposed use will incorporate the very purpose of the ordinance by allowing residents to take advantage of and contribute to the mix of commercial services in the area; that evidence shows that these transition centers are considered "good neighbors"; that CRJ specifically outlined numerous safety precautions that are part of the proposed use; and that the halfway house will not pose a safety risk to the residents.

We hold that the record supports the trial court's finding that CRJ met its burden of demonstrating by a preponderance of the evidence that its proposed use is reasonable and that the trial court did not exercise unsustainable discretion in awarding a builder's remedy. As the trial court noted, a builder's remedy here will "compensate CRJ who has invested substantial time and resources in pursuing this litigation, and is the most likely means of insuring that transition housing for federal prisoners is actually built." *See Britton*, 134 N.H. at 443.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.